IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| PAUL LOHMANN, *et al.*, | ) ) ) |
| Plaintiffs, | ) No. 19-cv-994C |
| v. | ) ) Filed: April 29, 2024 |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This litigation concerns per diem payments to ten reservists in the United States Army ("Army"). Plaintiffs sought an order entitling them to such payments for three fiscal years (2015–2017) during which Plaintiffs served on active duty. Shortly after this litigation began, the Government sought remand, which resulted in a decision by the Army Board for Correction of Military Records ("ABCMR") to grant relief for fiscal years 2016 and 2017. The Board denied relief as to fiscal year 2015. After losing on a motion for class certification, Plaintiffs prevailed in-part on cross-motions for judgment on the administrative record, and the Court remanded the matter to the ABCMR for further fact-finding and explanation. On remand, the Board granted Plaintiffs relief for fiscal year 2015.

Before the Court is Plaintiffs' motion for attorney fees. For the reasons discussed below, the Court **DENIES** the motion.

**I.    BACKGROUND**

The facts of this case are discussed in greater detail in the Court's prior opinions. *See generally Lohmann v. United States* (*Lohmann I*), 154 Fed. Cl. 355 (2021) (denying motion for class certification); *Lohmann v. United States* (*Lohmann II*), 160 Fed. Cl. 697 (2022) (ruling on

cross-motions for judgment on the administrative record). The Court provides a brief summary as relevant to the review of Plaintiffs' attorney fee request.

Plaintiffs are Army reservists who served on active duty at Fort Hood, Texas. *Lohmann I*, 154 Fed. Cl. at 358. In this case, Plaintiffs claimed entitlement to per diem payments for three years: Fiscal Year ("FY") 2015, FY 2016, and FY 2017. *Id.* Their entitlement to per diem payments was governed by the Joint Travel Regulations ("JTR") in effect at the time.[1] *See generally Lohmann II*, 160 Fed. Cl. at 699–700. The JTR permits per diem payments for temporary change of station ("TCS") orders, where service members typically do not relocate to their duty station. *Id.* at 700. Under TCS orders, service members are ordered to a temporary duty station. *Id.* The JTR authorizes per diem payments for service members assigned to a contingency operation at a temporary duty station "for more than 180 days at one location." *Id.* at 699 (citing JTR, Ch. 4. Pt. J., § 4950.A.2 (Oct. 1, 2014)). By contrast, permanent change of station ("PCS") orders order service members to a permanent duty station—in this case, Fort Hood. *Id.* For PCS orders, the JTR authorizes the Army to pay for reservists to move their households and provides a basic allowance for housing, but it does not authorize per diem payments. *See generally* JTR, Ch. 5, Pt. A; *id.*, Ch. 10.

The merits phase of this litigation primarily concerned Plaintiffs' entitlement to per diem payments for FY 2015, which began in October 2014. All ten Plaintiffs served on active duty during FY 2014 on PCS orders. *Lohmann II*, 160 Fed. Cl. at 700. Plaintiffs' PCS orders were scheduled to end on September 26, 2014. *Id.* at 701. Nine Plaintiffs were then put on TCS orders

---

[1] The Department of Defense has since changed the provisions of the JTR at issue in this case. *See Lohmann II*, 160 Fed. Cl. at 699 n.2.

2

at Fort Hood.[2] *Id.* at 700–01. These new TCS orders instructed Plaintiffs to report for active duty on September 26, 2014, the same day that their PCS orders expired. *Id.* Starting in October, a series of orders and amendments were issued, each of which changed the start date of Plaintiffs' TCS orders by delaying them one or two days. *Id.* at 701. After this series of changes, all Plaintiffs' orders had been retroactively amended to start on September 28, 2014. *Id.*

Plaintiffs' entitlement to per diem for FY 2015 turned on the question of why Plaintiffs' orders had been retroactively amended. As explained above, per diem payments are only authorized for reservists assigned to a temporary duty station. *Id.* at 699. The JTR does not allow a permanent duty station to become a temporary duty station. *Id.* at 700. For that reason, there must be at least a one-day break in service between PCS and TCS orders for reservists to be eligible for per diem. *Id.* In addition, the JTR prohibits retroactive modification of travel orders to "create, deny, or change an allowance[.]" *Id.* (quoting JTR, Ch. 4, Pt. J, § 4950.A.4) (citing JTR, Ch. 2, Pt. C, § 2205.A.1). This rule prohibiting retroactive amendments has an important exception: travel orders may be retroactively amended "to correct/complete an order to show the original intent." *Id.* Thus, if Plaintiffs' orders had been retroactively amended to create a break in service for the purpose of creating the entitlement to per diem, that would contravene the JTR. *See id.* But if the orders were originally intended to start on September 28, 2014, then the JTR would permit retroactive amendment to that effect. *See id.*

Plaintiffs did not receive per diem payments while serving under these TCS orders. *Lohmann II*, 160 Fed. Cl. at 703. Nor did Plaintiffs receive per diem payments while serving under subsequent orders at Fort Hood. *Id.* Believing that they were entitled to per diem payments,

---

[2] The tenth Plaintiff, Lt. Col. Mario Villegas, was not on TCS orders during FY 2015. *Id.* at 704 n.12.

3

Plaintiffs sought redress through various channels. *Id.* After other avenues proved unsuccessful, Plaintiffs submitted a formal demand in a letter to the Principal Deputy Assistant Secretary of the Army for Manpower and Reserve Affairs ("PDASA") on March 7, 2018. *Id.*

On July 18, 2019, shortly after Plaintiffs filed this action, the PDASA responded, concluding that Plaintiffs should receive per diem payments for FY 2016 and FY 2017, but not for FY 2015. *Id.*; *see, e.g.*, Carpenter Admin. R. 91–93, ECF No. 45-1 ("Carpenter AR").[3] The PDASA explained that Plaintiffs' TCS orders for FY 2015 had been amended retroactively in contravention of the JTR provision prohibiting amendments made in order to "create, deny, or change an allowance[.]" *Id.* at 703.[4] As originally ordered, there was no break in service between Plaintiffs' PCS and TCS orders: the PCS orders expired on September 26, 2014, the same day the TCS orders began. *Id.* Plaintiffs' orders were retroactively amended to delay the start date by one or two days, thereby creating the requisite break in service. *Id.* The start date, the PDASA explained, was delayed for the purpose of entitling Plaintiffs to receive per diem payments. *Id.* The PDASA concluded that, because there was no break in service, and because Plaintiffs were already on duty in Fort Hood on PCS orders, they were not entitled to per diem payments for FY 2015. Carpenter AR 91. The PDASA did, however, find that the orders for FY 2016 and FY 2017 had the requisite one-day break in service when the orders were originally issued. *Id.* Accordingly, the PDASA concluded that Plaintiffs had been erroneously denied per diem payments for those years. *Id.*

---

[3] For ease of reference, this opinion cites to the bates-stamped page number of each Administrative Record rather than the ECF page number.

[4] Plaintiffs did not raise the original intent exception in their letter to the PDASA, nor did the PDASA address the exception in his response. *See* Exs. to Pls.' Compl. at 147–153, ECF No. 1-1; Carpenter AR 91–93.

On July 11, 2019, Plaintiffs filed this lawsuit. *See* Pls.' Compl., ECF No. 1. Because the PDASA's letter came one week after this suit was filed, the Government sought remand to the ABCMR to address Plaintiffs' claims in light of the PDASA's letter. *See* Def.'s Mot. to Remand, ECF No. 12. Shortly thereafter, Plaintiffs filed a motion for class certification. *See* Pls.' Mot. for Class Certification and Appointment of Class Counsel, ECF No. 13. Before briefing on the class certification motion was complete, the Court granted the Government's motion to remand the case to the ABCMR. *See* Order Granting Mot. to Remand, ECF No. 16.

On remand, the ABCMR granted Plaintiffs relief consistent with the recommendations and reasoning of the PDASA's letter. *Lohmann II*, 160 Fed. Cl. at 704. After the ABCMR issued the remand decisions, Plaintiffs filed a corrected motion for class certification. *See* Pls.' Am. Mot. for Class Certification and Appointment of Class Counsel, ECF No. 27. The Government opposed class certification and moved in the alternative to stay the administration of a class until the Court ruled on cross-motions for judgment on the administrative record. *See* Def.'s Resp. and Cross-Mot., ECF No. 29. The Court denied Plaintiffs' request to certify a class and held that Plaintiffs' FY 2016 and FY 2017 claims were moot. *See Lohmann I*, 154 Fed. Cl. at 363, 367.

The Court then ruled on the parties' cross-motions for judgment on the administrative record, denying the Government's motion and granting Plaintiffs' motion in-part. *See generally Lohmann II*, 160 Fed. Cl. at 697. The Court held that the ABCMR had failed to adequately address the original intent exception to the JTR's prohibition of retroactive amendment of orders. *Id.* at 706–08. In addition, the Court held that the ABCMR's conclusion that the orders were amended for the purpose of creating an allowance lacked substantial evidence. *Id.* at 708–09. The Court remanded the matter to allow the ABCMR to address the original intent exception in the first instance, and for further fact-finding on why the orders had been amended. *Id.* at 710.

On remand, the ABCMR ruled two-to-one that Plaintiffs were entitled to per diem for FY 2015.  *See, e.g.*, ABCMR Remand Decs. at 133, ECF No. 79-1.  Before issuing a decision, the Board requested an advisory opinion from the United States Army Installation Management Command ("IMCOM").  *See, e.g.*, *id.* at 131.  IMCOM determined that the orders were originally intended to start on September 26, 2024, and had been retroactively amended for the purpose of creating an entitlement.  *See, e.g.*, *id.* at 131–32.  Contrary to the advisory opinion, the ABCMR concluded that Plaintiffs' orders had been amended to "reflect the command's intent that the applicant have a break in service and re-establish residency before continuing his service at Fort Hood and that [the applicant] traveled to his home of record during the break in service."  *See, e.g.*, *id.* at 18–19.  The dissenting ABCMR member concurred with the PDASA and IMCOM, concluding that the orders had been retroactively amended for the purpose of creating an entitlement, rather than to reflect the original intent of the orders.  *Id.* at 18.

Plaintiffs then moved to dismiss this matter on the basis that all their claims had been satisfied.  *See* Pls.' Mot. to Dismiss, ECF No. 84.  The Government did not oppose dismissal.  *See* Def.'s Resp. to Mot. to Dismiss, ECF No. 85.  The Court granted the motion and dismissed the case with prejudice.  *See* Order, ECF No. 87.  Judgment was entered on May 25, 2023.  *See* Judgment, ECF No. 88.

After judgment was entered, Plaintiffs timely filed a motion seeking attorney fees under the Equal Access to Justice Act ("EAJA").  *See* Pls.' Am. Mot. for Att'y Fees, ECF No. 90.[5]  Plaintiffs argue that they are prevailing parties and that the Government's position in this litigation was not substantially justified.  *See generally id.*  The Government does not appear to dispute that

---

[5] The Court struck Plaintiffs' initially-filed motion for attorney fees due to its failure to comply with RCFC 7.3.  *See* Pls.' Mot. for Att'y Fees, ECF No. 89.  Plaintiffs' Amended Motion complied with the Rules of the Court.

Plaintiffs are prevailing parties but argues that its overall position was substantially justified. *See* Def.'s Resp. to Mot. for Att'y Fees at 11–17, ECF No. 92. In addition, the Government contests that Plaintiffs are entitled to the full amount of fees sought in their motion. *See id.* at 17–26. Plaintiffs filed their Reply on October 25, 2023. *See* ECF No. 93. Accordingly, the motion is ripe for decision.

## II. LEGAL STANDARDS

EAJA creates "an exception to the general rule that plaintiffs may not recover attorney fees from the United States." *See Turner v. United States*, 165 Fed. Cl. 411, 415 (2023) (citing 28 U.S.C. § 2412(d)(1)(A); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983)). Plaintiffs may only recover attorney fees under Section 2412(d)(1)(A) when: (1) the plaintiff is a "prevailing party"; (2) the Government's position was not "substantially justified"; (3) no "special circumstances make an award unjust"; (4) the fee application is submitted within 30 days of final judgment; and (5) the prevailing party has a net worth as an individual of less than $2,000,000 at the time the action was filed. 28 U.S.C. § 2412(d)(1)(A)–(B), (d)(2)(B); *see Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990).

In this case, the Government only contests the second of these requirements, arguing that its position was substantially justified. The Government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) ("We are of the view, therefore, that as between the two commonly used connotations of the word 'substantially,' the one most naturally conveyed by the phrase before us here is not 'justified to a high degree,' but rather 'justified in substance or in the main.'"). "[A] position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct." *Id.*

7

Trial courts have discretion in assessing whether the Government's position is substantially justified. *Id.* at 552, 561–62; *Chiu v. United States*, 948 F.2d 711, 715 n.4 (Fed. Cir. 1991) ("It is for the trial court to weigh each position taken and conclude which way the scale tips[.]"). When making that assessment, "trial courts are instructed to look at the entirety of the government's conduct." *Chiu*, 948 F.2d at 715; *Jean*, 496 U.S. at 161–62 ("While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."). That overall assessment allows consideration of all positions taken in litigation, not just consideration of the merits. *See DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1343–44 (Fed. Cir. 2012); *see also Chiu*, 948 F.2d at 715 n.4 ("[W]hether the government was substantially justified overall where in litigation it depended on the ground of lack of jurisdiction and a party prevails on a substantive aspect of the agency's action which gave rise to the litigation necessarily involves an apples to oranges comparison.").

### III. DISCUSSION

The primary issue before the Court is whether the Government's overall position in this litigation was substantially justified. Plaintiffs initially brought three claims in this case, two of which were resolved at the outset without the Court's intervention. This litigation principally concerned the third claim: Plaintiffs' entitlement to per diem payments for FY 2015. Plaintiffs argue that the Government's pre-litigation denial of their per diem request for all three claims (*i.e.*, FY 2015–17) was not substantially justified. *See* ECF No. 90 at 8–9. In addition, Plaintiffs argue that the Government's primary litigation position—that Plaintiffs were not entitled to per diem payments for FY 2015—was not substantially justified. *Id.* at 9.

**A.     The Government's Pre-Litigation Position with Respect to FY 2016 and FY 2017 Was Not Substantially Justified.**

With respect to Plaintiffs' FY 2016 and FY 2017 claims, the Government's pre-litigation position was not substantially justified. Under the applicable JTR, only a one-day break in service was required to entitle Plaintiffs to per diem, and Plaintiffs had the requisite one-day break in service. After the PDASA reviewed Plaintiffs' records, he arrived at the conclusion that Plaintiffs were wrongly denied per diem payments for FY 2016 and FY 2017 because their original orders had the break in service. *See Lohmann II*, 160 Fed. Cl. at 703; Carpenter AR 91–93. Plaintiffs argue that the Army's pre-litigation position that a multi-day break in service was required by the JTR was erroneous. ECF No. 90 at 8–9; ECF No. 93 at 1. The Court agrees. The Government's initial denial of per diem payments based on the JTR did not have a reasonable basis in law, given that the JTR clearly required only a one-day break in service. *See Lohmann II*, 160 Fed. Cl. at 700. Instead, the Government's position was based on a recommendation from Army auditors who opined that a one-day break in service associated with a TCS order, while meeting the plain language of the JTR, "did not meet the intent of the JTR." *Lohmann I*, 154 Fed. Cl. at 368 (citing *Mobilized Soldiers on [TCS] Orders*: Audit Report A-2015-0087-FMX at 36, ECF No. 38-1). A policy preference that purports to be in line with "the spirit of the JTR," ECF No. 38-1 at 40, cannot trump the plain language of the JTR itself. The appropriate course would be to amend the JTR to reflect that policy, as was done here after FY 2017.

Though the Government's position on these two claims was not substantially justified, the Government did not, as Plaintiffs suggest, persist in pressing its position. *See* ECF No. 93 at 2. The FY 2016 and FY 2017 claims were resolved on remand, at the Government's request, after the conclusion of the process initiated by Plaintiffs' letter to the PDASA. *See Lohmann II*, 160 Fed. Cl. at 703; *see also* Attachs. to Pls.' Compl. at 147–153, ECF No. 1-1 (Letter from Plaintiffs'

9

counsel to PDASA seeking per diem payments for FY 2015 and FY 2016); Carpenter AR 91–93 (Letter from PDASA to Plaintiffs' counsel). Plaintiffs argue that the Government's decision to seek remand demonstrated its unwillingness to abandon its erroneous pre-litigation position. *See* ECF No. 93 at 2. But the Government's conduct indicates just the opposite. The PDASA, independent of this litigation, reached the conclusion that Plaintiffs were entitled to per diem for FY 2016 and FY 2017. *Lohmann I*, 154 Fed. Cl. at 365. The Government sought remand for the express purpose of allowing the ABCMR to consider the claims in the first instance and potentially grant Plaintiffs relief consistent with the PDASA's letter. *Id.* at 366. For that reason, the Court ruled in favor of the Government and remanded the matter to the ABCMR, which granted Plaintiffs relief. *See* ECF No. 16. Nor does the Court fault the Government for pursuing remand instead of settlement. Plaintiffs provide no authority for the proposition that pursuing such a course to remedy Plaintiffs' claims showed unwillingness to grant Plaintiffs' relief expeditiously. *See* ECF No. 93 at 2. Though the Government's position with respect to FY 2016 and FY 2017 was concededly erroneous, the Government ultimately abandoned that position shortly after Plaintiffs brought suit. *See* ECF No. 16; *see also, e.g.*, Carpenter AR 180.

In addition, the Court notes that the Government's position on the motion to remand was substantially justified. It had good reason to seek remand to the Board—to potentially grant Plaintiffs relief and narrow the issues in dispute—and appropriately did so. The dispute over remand, however, was a relatively small issue in this case and far less important than the merits. Thus, the Government's position on remand weighs less heavily in the Court's analysis of whether the Government's overall position was substantially justified. *See, e.g.*, *DGR Assocs.*, 690 F.3d at 1344 (giving less weight to a non-merits issue that was not the focus of litigation in assessing the Government's overall position).

**B.	The Government's Position on Plaintiffs' Entitlement to Per Diem Payments for FY 2015 Was Substantially Justified.**

With respect to the primary focus of this litigation, the Government's position that Plaintiffs were not entitled to per diem payments for FY 2015 was substantially justified. Though Plaintiffs ultimately prevailed before the ABCMR on the second remand, the Government had a reasonable basis in law and fact to argue that Plaintiffs were not entitled to per diem for FY 2015.

Relying on the Court's decision on the cross-motions for judgment on the administrative record, Plaintiffs argue that the Government's position that the Board's initial denial was appropriate because Plaintiffs' orders had been retroactively amended in violation of the JTR was not substantially justified. ECF No. 90 at 9. To be sure, the ABCMR's first decision on Plaintiffs' entitlement to per diem for FY 2015 could not be sustained under the applicable standard of review. The Board ignored an important exception to the rule it applied, the original intent exception, and there was not sufficient evidence in the record to support its conclusion that the retroactive modification created a false break in service. *Lohmann II*, 160 Fed. Cl. at 706–10.

However, the Government's defense of the ABCMR's decision with respect to the FY 2015 claim was substantially justified. Board decisions are subject to a deferential standard of review. *See id.* at 705. Agency adjudications have been upheld even when they lack a clear explanation, contain conflicting evidence, or fail to address every argument raised before the agency. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 290 (1974) ("The Commission's treatment of the evidence of the applicants' performance on other routes is not a paragon of clarity"). While the Court ultimately declined to sustain the ABCMR, the Government's decision to defend the Board's decision was reasonable. *See Monroe v. United States*, No. 2021-1553, 2022 WL 807400, at *9 (Fed. Cir. Mar. 16, 2022) (citing *Melendez Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011) (explaining that that a Board decision can

11

be substantially justified even when it does not address all issues raised by the plaintiff); c*f. Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (explaining that defenses lacking substantial justification "might not be frivolous but nevertheless should not have been . . . defended in the first place").

Most importantly here, the Government's position on the merits of the FY 2015 claim was substantially justified. *See Chiu*, 948 F.2d at 716 (placing a greater emphasis on the merits of the underlying claim than the Government's other actions in the matter); *DGR Assocs.*, 690 F.3d at 1343–44. The central question for that claim—whether the orders had been retroactively amended in order to create an entitlement, rather than to reflect the original intent of the orders—was a close one. The Court explained that there was evidence in the record pointing in both directions on the question of original intent, and many factual questions left unresolved. *Lohmann*, 160 Fed. Cl. at 706–08. Many of the arguments advanced by the Government in its cross-motion for judgment on the administrative record could have supported the ABCMR's conclusion that Plaintiffs were not entitled to per diem for FY 2015. *Id.* at 708. But because the Board itself had not supplied these explanations, the Court remanded the matter for further fact-finding and explanation, instead of holding for Plaintiffs that the amendment of their orders had been consistent with the JTR.[6] *Id.*

---

[6] Plaintiffs appear to object to one of the Government's arguments (*i.e.*, the "false break in service" theory) by arguing that the Government assumes without proof that the Certificates of Release or Discharge from Active Duty ("DD214") and Leave Earning Statements ("LES") were issued based on their orders as amended. The Government did not, as Plaintiffs state, represent that LESs were issued based on amended orders—only that they did not provide evidence of when Plaintiffs reported for active duty. *See* ECF No. 92 at 16; Def.'s Cross-Mot. for J. on the Admin. R. at 18, ECF No. 48. Further, Plaintiffs provide the Court with no basis to question the Government's representation that the DD214s showing September 28, 2014, as the start date of Plaintiffs' orders were generated in 2015, after Plaintiffs' orders had been amended. *See* ECF No 92 at 16; ECF No. 48 at 17. That representation is consistent with the dates on the DD214s in the Administrative Record. *See, e.g.*, Carpenter AR 124. In any event, one of the reasons the Court remanded the case to the Board was to make factual findings about this type of evidence with respect to the question of original intent.

The Court's remand to the ABCMR did not foreclose the possibility that the Board could reasonably reach the same conclusion (denial) based on a proper review of the facts and law. *Id.*

Both the ABCMR decision on remand and the IMCOM advisory opinion referenced therein support the conclusion that the Government's position on the FY 2015 claim was substantially justified. With the benefit of additional fact-finding, one of the three ABCMR members concluded that Plaintiffs were not entitled to per diem for FY 2015. *See, e.g.*, ECF No. 79-1 at 133. The majority concluded that the DD214s and LESs demonstrated that Plaintiffs had an actual break in service. *Id.* Without further explanation, the majority also concluded that Plaintiffs demonstrated by a preponderance of evidence that Plaintiffs' orders had been amended to reflect the command's intent that Plaintiffs "ha[d] a break in service and re-establish[ed] residency before continuing [their] service at Fort Hood." *Id.* The minority member concluded that the amendment of the orders violated the JTR, concurring with the reasoning of the PDASA and IMCOM. *Id.*

As explained by the ABCMR, IMCOM found that Plaintiffs' orders had not been retroactively amended to reflect their original intent. *Id.* at 131. The IMCOM advisory opinion, as summarized by the ABCMR, explained that the original intent of the higher headquarters, First Army, was to mobilize Plaintiffs' unit on September 26, 2024. *Id.* First Army issued orders to mobilize Plaintiffs' unit on that date. *Id.* at 132. IMCOM reasoned that the original mobilization date for Plaintiffs was correct because it matched the mobilization date from the higher headquarters for their unit. *Id.* Plaintiffs object that IMCOM conflated the orders mobilizing Plaintiffs' unit with the orders mobilizing Plaintiffs themselves. ECF No. 93 at 3. To the contrary, the IMCOM opinion uses that distinction and never states that the higher headquarters issued orders for Plaintiffs individually. *See* ECF No. 79-1 at 132. IMCOM's point was that, because

the original mobilization date for Plaintiffs matched the mobilization date for their unit, that start date was likely the date originally intended by the Army. *Id.* In addition, IMCOM noted that the extensions of all Plaintiffs on active duty to September 26, 2014, and the start date of their follow-on orders on the same date "provide an inference that the date of 26 September 2014 has operational relevance." *Id.* To that end, an e-mail from a Budget Analyst for the 75th Training Command "indicates that the intent in amending the orders was to 'gain the Soldiers their per diem entitlements,'" rather than for operational reasons. *Id.* In all, this evidence led IMCOM to conclude that the orders were amended for the purpose of creating an entitlement, rather than to reflect the original intent of the orders. *Id.*

Though the ABCMR concluded that Plaintiffs were entitled to per diem for FY 2015, a reasonable person could have reached the opposite conclusion. Accordingly, the Court concludes that the Government's position on this claim was substantially justified. *See Pierce*, 487 U.S. at 565 (explaining that a position is substantially justified "if a reasonable person could think it correct").

    **C.**    **The Government's Position on Class Certification Was Substantially Justified.**

Aside from the merits, the other major issue in this litigation was whether the Court should certify a class. *See generally Lohmann I*, 154 Fed. Cl. at 355. Plaintiffs sought class certification as to all three claims. The Government argued that Plaintiffs' claims for FY 2016 and FY 2017 were moot, given the relief afforded by the ABCMR, and that Plaintiffs had failed to make a showing on almost any of the elements required to certify a class.

The Government's position on the class certification motion was substantially justified. It prevailed on every disputed point the Court considered and decided. The Court first rejected Plaintiffs' arguments that the FY 2016 and FY 2017 claims had not been mooted by the first

14

remand decision. *Id.* at 362–67. On this point, the Government had the much stronger argument. Because of the ABCMR's decision on remand granting Plaintiffs relief for these claims, the parties no longer had adverse interests over an issue that the Court could adjudicate. *Id.* at 363–64. The Court also rejected Plaintiffs' argument that the PDASA's letter being filed one week after Plaintiffs filed the Complaint was an effort to "pick off" Plaintiffs' FY 2016 and FY 2017 claims. *Id.* at 364–66. In addition, the Court explained that the picking off exception to mootness was inapposite in a case where the Government could not "act unilaterally to moot Plaintiffs' claims" and could only redress the claims through the remand it obtained from this Court. *Id.* at 366. To that end, the Court explained that mootness avoidance theories generally do not apply in a case, like this one, where relief is granted through a standard agency process. *Id.* In sum, on the question of mootness, the Court rejected all arguments raised by Plaintiffs and held for the Government. Upon review of these arguments, the Court finds that the Government's position on this question was more than substantially justified.

Similarly, the Government's opposition to class certification for the FY 2015 claim was also substantially justified. The Government prevailed on all contested issues on this question. The Government argued, and the Court agreed, that Plaintiffs had failed to carry their burden to establish any of the four elements of class certification contested by the parties: numerosity, commonality, typicality, and superiority. *Id.* at 367.[7]

The Government's position on each of the contested elements was substantially justified. For numerosity, though Plaintiffs claimed that there were hundreds or thousands of possible Plaintiffs, the Court determined that, at most, a potential class could contain 148 members. *Id.* at 368–69. But even among that group of 148 service members, Plaintiffs had not provided sufficient

---

[7] The Government did not contest adequacy. *Lohmann I*, 154 Fed. Cl. at 367 n.9.

evidence to show that they would have similar claims. *Id.* The Government was also justified in contesting commonality. Each of Plaintiffs' claims would require individualized analysis and determinations. *Id.* at 370. Indeed, on remand, the ABCMR had to review the records of each individual Plaintiff in assessing their entitlement to per diem payments for FY 2015. *See generally* ECF No 79-1. Plaintiffs, moreover, failed to identify any "policy, rule, or widespread practice related to the grounds underlying their FY 2015 claims." *Lohmann I*, 154 Fed. Cl. at 370. Accordingly, Plaintiffs failed to show that the Government had treated the proposed class on similar grounds for that claim. *Id.* As for typicality, Plaintiffs' claims were not typical of claims of a "proposed class of members whose per diem allowance was denied due to a retroactive modification of their orders." *Id.* at 371. Though others had retroactive amendments, the record indicated that potential class members' claims did not "'share the same essential characteristics' as the retroactive amendment at issue in Plaintiffs' FY 2015 claim." *Id.* Finally, due to the small number of potential class members and high payout per potential plaintiff, Plaintiffs failed to show that a class action was superior to other avenues of adjudicating the controversy. *Id.* at 371–72.[8]

\* \* \*

Considering all the above, the Court concludes that the Government's overall position was substantially justified. The Government's position on the primary claim litigated in the case—Plaintiffs' entitlement to per diem payments for FY 2015—was substantially justified. Though the Court ultimately found the initial remand decision denying relief to be inadequate, the Government's defense of the decision and position on the merits were reasonable. In reaching this conclusion, the Court also takes into consideration the Government's erroneous pre-litigation

---

[8] The Government's position on class certification was further supported by the Court's denial of Plaintiffs' Motion for Reconsideration. *See* Order Denying Mot. for Reconsideration, ECF No. 73.

position on the claims for FY 2016 and FY 2017. *See Chiu*, 948 F.2d at 715. However, the Government sought remand to redress those claims at the outset of the litigation, and so its position on those claims weighs less heavily than its position on the primary claim litigated in this matter. *See DGR Assocs.*, 690 F.3d at 1343–44. Finally, the Government's position on the other major issue in this case—Plaintiffs' request to certify a class—supports the Court's conclusion that the Government's overall position was substantially justified. Though given less weight than the Government's position on the merits, the Government decisively won on that motion and the motion for reconsideration. *See id.*; *Sabo v. United States*, 127 Fed. Cl. 606, 631 (2016) (considering the Government's position on non-merits issues in assessing the Government's overall position), *aff'd*, 717 F. App'x 986 (Fed. Cir. 2017).

## IV.  CONCLUSION

For these reasons, Plaintiffs are not entitled to recover attorney fees under EAJA. 28 U.S.C. § 2412(d)(1)(A). Accordingly, Plaintiffs' motion for attorney fees (ECF No. 90) is **DENIED**.

**SO ORDERED.**


Dated: April 29, 2024                                   */s/ Kathryn C. Davis*
                                                        KATHRYN C. DAVIS
                                                        Judge